Louis B. Humphreys

*v.*

James R. Eastlack.

[Filed March 6th, 1902.]

1. A private citizen cannot sustain a bill in equity to abate a public nuisance unless because thereof, he suffers, either in his person or his property, some special injury which is peculiar to himself, and not as one of the public.

2. A complainant who by his pleadings and issues joined thereon and proofs submitted in support of those issues, has presented certain and definite grounds for relief, cannot, after the case has closed, without suggestion of amendment, present by argument only, entirely different and new grounds for relief and have decree made on those grounds.

3. It is declared in *Salter* v. *Jonas, 10 Vr. 469*, that a deed conveying a lot of land which describes its boundary as running along the side of a street will, by legal presumption (in the absence of words excluding the street), be held to embrace the lands lying in the street, to the centre line. This declaration is based upon the assumption that there has been some showing that the grantor in the deed had title to the centre line of the street. If there be no proof that the grantor had title to the centre line of the street, no presumption arises that he intended to convey to that centre line.

On bill, answer and proofs.

The bill filed by complainant claims that he is the owner of a lot of land, the houses on which are Nos. 230 and 232 Market street, in the city of Camden. This lot lies adjacent to the southwest corner of Market and Third streets. The bill alleges that four lots lying at the four corners of Third and Market streets, each thirty feet on Third street and forty feet on Market street, were (at some unnamed day) conveyed to the city of Camden "to be used as a public mart or highway and for the public use;" that for more than forty years said lots have been used by the city of Camden as a public highway and for public use as part of its public street, and that the corner adjacent to complainant's lot has been used by complainant as an entrance or highway to his land bordering on said Market place or street.

These four lots are recessed corners, and are designated "Market square" in some of the deeds and as "Market place" in later ones.

The bill alleges that the defendant erected a building on his lot, adjoining complainant's lot, and that some five years before the filing of the bill of complaint, the defendant constructed along the east line of his building a metal awning extending for twenty feet from his east wall out upon Market place in front of the complainant's property, the awning being fifteen feet high and having five awning poles on said Market place, to sustain it; that at the same time that the defendant

erected the awning, &c., he placed a cellarway in the east side of his building, extending out upon Market place a distance of six feet; that he continually keeps a number of boxes and barrels in said Market place upon the land in front of complainant's property; that he has built in the east line of his property a bulk window, which extends beyond his building line for two feet out upon said Market place in front of the property of complainant.

The complainant charges that said Market place, by the erection of the awning, cellarway, bulk window and the placing of boxes, barrels, &c., is, and must necessarily and unavoidably be, much obstructed as a public highway or for the public use; that Market place is thereby rendered much less convenient to the complainant and his tenants; that he is deprived of its use and enjoyment as an entrance to his land bordering thereon, as a highway, and that his outlook, light and air and vision over Market place in front of his land is hampered, cut off and destroyed, detracting from the value of his property to his damage and injury.

The complainant prays that the defendant may, by decree, be forbidden to continue his alleged obstruction of Market place and from entering or placing any of the obstructions named in, upon or across said Market place and from preventing the complainant in his enjoyment of said Market place.

The defendant has answered the bill. He admits the complainant's ownership of the lot of land at the southwest corner of Third and Market streets. He denies the alleged conveyance of the four corner lots to the city of Camden to be used as a public highway, but admits that for the last forty years they have been so used by the city of Camden as part of its public street. He denies that the complainant has used them as an entrance or highway to his land bordering on said lots, and avers that the complainant has had no special use of the lots in front of his property different or distinct from the public use.

He also denies that he erected the building on his lot, as is alleged in the bill, and says that the building was erected by a former owner, Elizabeth F. Smith, in the same manner as buildings are lawfully erected along the line of public streets

of the city of Camden, and that it was so erected with the full consent and approbation of Evaline E. Humphreys, sister of said Elizabeth F. Smith, and then owner of the lot now owned by the complainant. The defendant also alleges that Market place, named in complainant's bill, is part of a public street of the city of Camden; that by the amended charter of that city, the exclusive control of the streets of the city is vested in city council, and in pursuance of that power, the city council has, by ordinance, regulated the use of the streets of the city, including said Market place, and has provided for the erection of awnings, stoops, show and bulk or store windows.

The defendant denies that he erected the metal awning alleged in the bill and avers that it was built by the said Elizabeth F. Smith in 1879, with the full consent of the said Evaline E. Humphreys, in accordance with the ordinances of the city of Camden, but admits that in 1889 the defendant caused the awning to be repaired. The defendant further denies that he placed the cellarway at the time of the repairing of his awning, and says that the cellarway was built prior to 1879, while the property owned by defendant was owned by said Elizabeth F. Smith, and that it was located with the full consent of Evaline E. Humphreys, then owner of the complainant's property; that it extends out a distance not of six feet, but only four feet nine inches, into said Market place.

The defendant denies that he continually has barrels and boxes in said Market place as is alleged in the bill, and says that such barrels and boxes are only occasionally in said Market place, while waiting to be stored in defendant's building or to be hauled away, and that they are used in connection with the retail grocery business of the defendant. The defendant alleges that he has erected a bulk window on the east side of his property, denies that it extends two feet beyond his line and says that it extends but eleven inches and is built in accordance with the ordinances of the city of Camden.

The defendant denies that the erection of the awning, cellarway, bulk window and the placing of boxes and barrels in Market place, are any obstruction of the public highway for public use, and further denies that Market place is thereby rendered less

Humphreys *v.* Eastlack.

convenient to the complainant and the tenants of his land, and that they hamper or destroy the outlook, light, air and vision of the complainant over said Market place.

The defendant insists that the complainant's bill exhibits no injury special to himself, distinct from that sustained by the general public; that it shows no equity and he prays the same advantage of this, as if he had demurred to the bill.

The following is a copy of a plan exhibited at the hearing, showing the *locus in quo* and the several alleged obstructions of the highway, of which complaint is made. The recessed corner lot, referred to in the bill as "Market place," is indicated by a red line and dotted blue line. (See notes below.)

¹ The red line is indicated on the plat by the heavy black line.
² The blue dotted line is indicated on the plat thus: ●●●●●

Mr. Martin V. Bergen, Jr., and Mr. Martin V. Bergen, for the complainant.

Mr. Thomas E. French, for the defendant.

GREY, V. C.

There are several incidents in the bill of complaint in this cause which should be noted in order to have a clear understanding of the issues, to which the parties directed their attention at the hearing.

First. The bill shows that all the alleged obstructions occur on the lot which is the recessed corner of Third and Market streets, which lies adjacent to both the complainant's and the defendant's lots. This recessed corner lot is sometimes called "Market square" and sometimes "Market place." (See diagram.)

Second. The bill of complaint distinctly alleges that this recessed corner lot was conveyed to the city of Camden, "to be used as a public mart or highway and for the public use."

Third. Nowhere in the bill is there any allegation that it was in any way conveyed to the complainant, or that he has any estate in fee in it.

Fourth. All the injuries complained of are stated to be obstructions of the highway, whereby the public and the complainant are injured in their use and enjoyment of the highway, and none are stated to be the imposing of servitudes in addition to and different from the public way upon any estate in fee held by the complainant in the lands upon which the alleged intrusive structures are placed.

The allegations in the bill of complaint that the space upon which the defendant's several structures have been placed is a part of the highway was not in any way proven in the cause by evidence. No proof of any significance was offered on that point. It was assumed that the defendant's admission in his answer that the space in question had by user become part of a highway sufficiently established the complainant's allegation. The admission is not that the space has always been a part of a highway, nor that it was dedicated as a highway by any owner of that space and accepted by the public. It simply admits that by user for

forty years it had, when the complainant filed his bill of complaint, become a highway.

Two ancient deeds and a copy of an old map were offered by complainant, and these, it was argued, showed a dedication of the recessed corner in front of complainant's property as a highway. Nothing in the deeds declares a dedication of the space in question. One of these deeds, in describing the lots they conveyed, refers to the space in question, which lies adjacent to those lots, as "Market square." But there is no proof that the grantor in those deeds ever had any title to the space called "Market square" upon which any presumption of a dedication might be based. The old map is supported by no proof whatever. Neither the deed nor the map, disconnected, as they are, from any supporting line of proof joining them with a proved owner of the space in question, called "Market square" or Market place," has any probative force to establish the claim that "Market square or "Market place" was ever dedicated as a highway.

The existence of a highway over the space in question (the southwestern recessed corner of Third and Market streets), must therefore in this cause depend entirely upon the defendant's admission in his answer, that by user for forty years that space has become a part of a highway.

The evidence presented was addressed to the showing that the defendant has unlawfully, by the construction of the awning, the bulk window and the cellarway, and by the piling up of boxes and barrels, so obstructed the space in question (Market place), a public highway, that both the public and the complainant were deprived of their full and unimpeded use of that space as a highway. On the case stated by the bill of complaint, and attempted to be proved, the acts charged, if unlawful, clearly amounted to a public nuisance, as obstruction of a public highway.

A long line of decisions in this state declares that a private citizen cannot sustain a bill to abate a public nuisance, unless he suffers in himself or his property some special injury peculiar to himself, and not as one of the public. *Van Wagenen* v. *Cooney, 18 Stew. Eq. 25,* and cases there cited. The defendant's answer in this cause challenges the complainant's right as a private citizen to file this bill for the causes alleged. The

court of appeals has declared that a court of equity will not enjoin an offence against the public at the instance of an individual, unless he suffers some private, direct and material damage beyond the public at large, as well as damage otherwise irreparable. *Morris and Essex Railroad Co.* v. *Prudden, 5 C. E. Gr. 537.*

Examining the case here presented in the light of these expositions of the law, it appears that the first awning was built in 1878 or 1879 by Mrs. Jesse Smith (Emeline Smith), a prior owner of defendant's store. The present awning was rebuilt in substantially the same place (perhaps a little wider) by the defendant in 1889. It consists of a corrugated iron roof, leaning from the defendant's building to and supported at four iron posts. It is not closed in at the sides. The roof is about eleven feet from the ground at the posts and fourteen feet at the defendant's building. The only obstruction to the view caused by this awning is occasioned by the iron posts, about three inches in diameter, and the edge of the corrugated iron roof. The nearest point of the structure to the complainant's property is fourteen feet, and this feature marks the one point wherein this awning differs from awnings in use in front of hundreds of other stores. It is fourteen feet further away from the front of complainant's building than the usual awning structure is from the next building. This, of course, makes it interfere less with the complainant's property than the next building awning does.

No objection appears to have been made to the first awning which stood without the objection from 1879 to 1889. In the latter year the defendant took the old one down to replace it by the new one, and the complainant (apparently for the first time) objected, not to any difference between the old and the new one, but to the erection of any awning by the defendant. No suit was brought to restrain the construction of the new awning and it has remained unchallenged until the present action, which asks a mandatory injunction for its removal.

There is no showing that the awning is any material injury to the complainant as distinguished from the general public, nor is it shown that its presence causes him irreparable injury. If this awning is a private and special injury to the complainant,

as an adjoining owner, beyond the injury to the public, then every awning erected in front of a store is a private nuisance to the adjoining owner. Nothing in the proofs indicates that this structure has any peculiarity which so interferes with the complainant in the enjoyment of his property as to amount to a private nuisance. This appears not only in the exhibition of the physical character of the structure and its relation to the complainant's property, but in the fact that the previous owners of the property from 1879 to 1889 are not shown to have made any objection to it, and the complainant himself, while objecting in 1889, took no legal steps until he began this suit to redress his supposed wrongs. It is quite apparent that the inconvenience to the complainant was and is of trifling character, quite unworthy of the dignity sought to be given it by this suit. The cases all hold that the remedy by injunction, in cases of this sort, where the offence charged, if it exists, is a public nuisance, must be applied with the utmost caution and only when necessity requires it, if invoked by a private person alleging the same offence to be specially injurious to him. *Morris and Essex Railroad Co.* v. *Prudden, 5 C. E. Gr. 536; Van Wagenen* v. *Cooney, 18 Stew. Eq. 25; Township of Raritan* v. *Port Reading Railroad Co., 4 Dick. Ch. Rep. 16.*

The next complaint is about the bulk window, which extends out from the defendant's store building line for thirteen inches, and is the usual show window with a cornice at the top which reaches out somewhat further. The window itself is well within the sixteen inches to which, by Camden city ordinance, it is permitted to extend a bulk window beyond the building line. The cornice of the bulk window does extend beyond that distance. There is no showing that this cornice works any injury to the complainant beyond this slight intrusion upon the highway. He complains of the window, which is within the ordinance line, but never specially mentions the cornice. Neither the bulk window nor its cornice inflict any special damage upon complainant's property. They are in fact more than thirty feet from the front line of his building, and cannot possibly be any substantial injury to him in the enjoyment of the highway. As

intrusions on the highway, they are clearly within the same class as the awning and governed by the principles hereinbefore stated.

The cellarway complained of extends from the defendant's store building for about four feet nine inches on its easterly side and has a stone edging, flush with the pavement, reaching about six inches further. It is used to receive from the street the barrels, boxes and larger parcels of the defendant's stock of groceries. It has been in its present location without objection at least since 1889, and was preceded by another of similar size, in almost the same place, perhaps a little nearer Market street, which had been in the old building at least since 1862. Neither cellarway, *per se,* appears to have been objected to, but the leaving of barrels and boxes opposite its entrance had been occasionally, previous to three years before this suit, a matter of complaint. Neither the structure nor its location has any peculiarity which differentiates it from the usual cellar entrance to stores. Its nearest point is twenty-two feet from the front of complainant's building. As has been said of the awning, if this is a private nuisance to the complainant, every other cellarway must be a private nuisance to the next-door neighbor.

The next and last item mentioned in the bill of complaint as an interference with complainant's enjoyment of the highway, is that the defendant continually has a number of barrels and boxes in Market place upon the land in front of complainant's property, thus obstructing the complainant's use of the public highway. The proof is that previous to three years ago there was some ground for this complaint, arising apparently because barrels and boxes for or from the defendant's store were not removed within reasonable time. There were two occasions when they especially interfered with the business of the complainant's tenants. These happened when drunken drivers put the barrels, &c., in front of the tenant's door. He notified the defendant, who in a couple of hours had them removed. The defendant claims no right to use this space as a place for storage. He explicitly declares that goods which come and any empty boxes, &c., which go, are now permitted to remain on the space in question only such reasonable time as is required for their removal in the ordinary conduct of business. There is here no

showing of sufficient cause for an injunction. The only wrong proven had long ceased to exist before suit brought. No right to do the thing complained of is claimed. No renewal is threatened. The writ should not go to prevent a non-existent and merely possible wrong, which no one presently intends to inflict.

On the whole case, as alleged in the pleadings and proven, the complainant has failed to show any right to equitable relief.

In presenting this cause on the argument the complainant's junior counsel has submitted an elaborate and ingenious brief in which he puts forward what is substantially a new and different case from that alleged in the bill.

He now contends that the complainant is the owner of an estate in fee in the recessed corner of Market and Third streets, referred to as "Market square," sometimes as "Market place." He further insists that the several alleged intrusions of the defendant upon this space are not uses of a highway, but the imposition of additional servitudes, adding to the burden of the public highway, which the complainant as owner of the fee is entitled to have removed by the mandatory decree of this court.

This, it must be observed, is a clear departure from the complaint to which the defendant was invited to respond, and seeks to argue the cause upon lines outside of the *allegata* and *probata.* This course of procedure has always been received with disfavor. Even clear proof of matters not alleged as ground for relief in the pleadings will not be noticed by the court. *Van Sciver* v. *Bryan, 2 Beas. 434 (Chancellor Green).* Where a party has presented his case by his bill and failed to sustain it by evidence, he cannot change his position and base his claim for relief on matters incidentally disclosed by the proofs. *Pasman* v. *Montague, 3 Stew. Eq. 393.* In *Midmer* v. *Midmer, 12 C. E. Gr. 548,* the court of appeals unanimously refused, on an allegation of a trust arising between parties by express agreement, and mentioning no other trust, to allow proof to be made of a resulting trust in another person.

In order, however, to consider the whole case submitted, the argument of the complainant's counsel has been entertained.

It proceeds upon the assumption that the whole recessed

(southwest) corner at Market and Third streets, called "Market square" in the two old deeds and "Market place" in the Fetters partition (hereinafter referred to) is a part of Market street on which complainant's buildings directly front, and is no part of Third street upon which the defendant's building has a side front (see preceding diagram, where this space is indicated by a red line and a dotted blue line); that the complainant is the owner of the fee to the middle of Market street, including the whole of the recessed corner lying in front of his lots.

This argument is directly contrary to one of the opening allegations of the bill of complaint which states the conveyance to the city of Camden of those

"four lots or pieces of land situate ＊ ＊ ＊ at the corner of Market street and Third street ＊ ＊ ＊ to be used as a public mart or highway, and for the public use."

The Market place is one of these lots. This allegation is entirely inconsistent with the complainant's argument that he has an estate in fee in the premises in question, for it asserts that the lot of land was itself conveyed to the city for a named use, thus conveying the fee in the land, not that a right of way in it was conveyed, thus passing only an easement and leaving the fee in the grantor.

The complainant bases his claim to the ownership of the fee of the recessed corner in front of his lots upon the doctrine declared in the case of *Salter* v. *Jonas, 10 Vr. 469,* and the line of cases following it. He insists that under these rulings his fee-simple title must be held to run to the middle of Market street, taking in the whole recessed corner and leaving no part of it to the complainant's lot, which also bounds on it, on the east, and he argues that on this ownership of the fee in this recessed corner, he may, in this suit, claim as fee owner to have relief against the defendant for the intrusions set forth in the bill of complaint.

*Salter* v. *Jonas* declared that unless these be words of exclusion of a street, a deed for a lot of land describing it as running along the side of a street, will, by legal presumption, be held to

embrace the lands lying in the street to its centre line. This exposition must rest upon the assumption that there has been some showing that the grantor in the deed on which the presumption is to arise had title to the centre line of the street.

No proof has been submitted in this cause which would support a judgment that any grantor, under whom the complainant claims, ever had title to the lands lying within the space in dispute known as "Market square" or "Market place." Nothing was offered to show that Jacob Cooper, who made both the two old deeds, conveying the lots now respectively held by the complainant and the defendant, ever had any title in the space in question. Nothing has been offered to show that Richard Fetters, under whose partition both parties claim, ever had any title to the space in question. Consequently there is in this case no grantor, owner of the title to the lands in dispute, whose deed conveying lands bounding on Market street can, by legal presumption be held to embrace the lands lying in the street to the centre line.

In *Salter* v. *Jonas* the dispute as to the lands lying in the street arose between the plaintiff and the defendant who was his remote subsequent grantee. The plaintiff's original title to the lands in the street was not questioned. The only matter in dispute was whether his deed, bounding along the street, operated to convey the lands lying within it to the centre line. In the present case neither party claims by deed, directly or remotely, from the other.

The lots of both the complainant and the defendant were held at the time of his death by Richard Fetters in fee-simple. The easterly line of the house (now owned by the defendant) was the westerly line of the space called in the partition Market place. The northerly line of lots Nos. 230 and 232 (now owned by complainant) was the southerly line of Market place. Neither property at the time of the partition had any dominant right in "Market place" as against the other. The confirmation deed ratified the partition by the commissioners. By the same acts, at the same time, title to their several lots passed to each of the grantors of the respective parties to this suit. If any

superior right in so-called "Market place" vested in one over the other, it must be by virtue of the partition.

But even if Richard Fetters had been proven to have held title to the lands in question, the partition and deed for the complainant's lots could not be held to be within the rule laid down in *Salter* v. *Jonas.* The lands in question are in this cause admitted to have become a highway by user, but it is quite evident that in the partition, where, for the first time, they are called "Market place," they were not dealt with as part of Market street. The complainant's lot is by the partition and confirmation deed not bounded on Market street, it bounds on "Market place." This is clearly shown in the boundaries of the lots partitioned. In the description of defendant's lot No. 3 (set off to Elizabeth F. Smith), Market street and "Market place," are recited as separate localities which corner on each other. In the description of complainant's lot (No. 3, set off to Evaline E. Humphreys), "Market place" (not Market street) and Third street corner on each other. "Market place" was not Market street according to the expressed intent of the partition and confirmation deed.

The admission in the answer that the space called in the bill "Market place" is a public highway, must be considered with the allegation in the bill and that is that it has become such by user by the public for a highway for forty years. There is no admission that it had become a highway in 1867–1873, when the partition was made and confirmed. Nor is there any proof that this space was then a part of any street or highway, whereby a description created at that date, bounding on it, might be presumed to carry title to the middle of the highway.

The complainant has shown no evidence that his deed for his lots Nos. 230 and 232, bounds on Market street or on a public highway, on which he can claim rights of a fee-simple owner by construction of law, in the space used as highway in front of his property.

Furthermore, the reasoning of *Salter* v. *Jonas,* and like cases, does not apply to the situation under examination. On the contrary, if presumptions are to be raised in the absence of expressions of the parties at the time of the severance of the title

by the partition, they should be against the complainant's contention of exclusive ownership of the space in question.

The complainant's property at the time of the partition had a direct frontage on "Market place." The defendant's property had a side frontage on "Market place." Each property had windows and doors opening out of its buildings on its frontage. Here was an open and visible use of the space in question, of the most notorious character, manifestly continuous and permanent, by each property. Each property was dependent upon its use of the space designated as "Market place," not only for its own beneficial use, but as a valuable appurtenance to the land and buildings on each lot, without which the most reasonable and convenient method of enjoying the property could not be had. The properties were severed by the partition and confirmation deed. These were coincident acts affecting both parties. No words, excluding either from the beneficial enjoyment of the space called "Market place" were inserted in the partition descriptions. It would, under such circumstances, be entirely unreasonable to presume that one property was given the exclusive ownership of the fee in the whole of this adjoining space the beneficial use of which, along the line of the lot given to each, was essentially necessary to each severed lot.

It is not necessary that in this cause it should be determined who does own the fee of the space in question. The complainant has failed to show that he owns it, either by proof of ownership or of facts which might raise a presumption of ownership, and he cannot base any claim for redress for his alleged injuries upon any such ownership.

As there has been no showing that the complainant holds any estate in fee in the space lying in front of his lots, which both parties admit is now charged with a public highway easement, there is no occasion to examine into his further claim that the structures built by the defendant on the recessed space in question are servitudes, not within the easement of a public highway, but additional thereto, and unlawfully imposed by the defendant upon the complainant's estate in fee.

This point touching the complainant's rights as owner of the fee in the disputed space has been considered and passed upon

only because it has been most urgently presented in the complainant's brief. The frame of the bill of complaint would not, in any view of the case, justify a decree in favor of the complainant, based upon his supposed rights as owner of the fee of the premises upon which he claims the defendant has unlawfully intruded.

Upon the whole case the complainant has shown no right to the relief which he claims. I will advise that his bill be dismissed, with costs.