Both these suits relate to the same subject-matter, but are exactly opposed with respect to the relief sought.
In the first suit the complainants seek an injunction preventing the defendant from selling any of its property for burial or cemetery purposes. In the second suit, which resulted from the first, the complainant asks to have the same defendant enjoined from selling any of its land for other than burial or cemetery purposes.
These two suits have been consolidated by order of this court.
This controversy arises from the following state of facts which I find from the testimony and evidence submitted herein:
In March, 1880, Charles Chasey laid out a cemetery on land owned by him, and filed in the office of the county clerk at Freehold, New Jersey, a map thereof entitled "A map of Greenlawn Cemetery, Long Branch, New Jersey." On January 28th, 1882, Charles Chasey and his wife, Mary H. Chasey, conveyed this property to Levice Chasey, who, three days later, conveyed to Mary H. Chasey. In these deeds the property is described as "being the same property whereon the said Charles Chasey now resides and including `Greenlawn Cemetery,' containing ten acres, more or less." From March, 1880, to September, 1922, Greenlawn Cemetery was operated by Mary Chasey and Charles Chasey, either one or both. About two hundred and fifty burial plots were sold by them out of the property shown on the original map. This map *Page 740 
covered, approximately, three or four acres. Having disposed of all of the lots shown on that map in January, 1902, they had the adjoining lands, which were a part of the lands described in said deeds, laid out and mapped into lots numbered from 1 to 641, inclusive, and this map was entitled by the engineer who made it, and of his own volition, "an addition to Greenlawn Cemetery." It is claimed by the defendant, and not denied by the complainants, that this later map was filed in the office of the county clerk at Freehold in 1902, but it appears that no such map was there on file at the time this suit was instituted. A duplicate of the map has, however, since been filed in that office. After the making of the new map, and prior to September, 1922, the Chaseys sold to individual purchasers about two hundred and fifty burial plots as shown on that map, and bodies have been buried in practically the entire two hundred and fifty plots. The land shown on the two maps is separated by a roadway, which is now lined with maple trees, set out, approximately, twenty years ago. Prior to 1902 the lands which were mapped in that year were used by the Chaseys for farming and grazing purposes, and since 1902 and up to within the past ten or twelve years the unused portion of the lands shown on the later map — that is, the portion which has not been actually sold in burial plots, was also used for farming and grazing purposes. In September, 1922, Edward E. LaCour and Samuel Heimlich purchased the unsold lots shown on the map of 1902, and in November, 1922, conveyed those lots to the defendant company. Mr. LaCour is the secretary and treasurer of that company. Since the date of this latter conveyance the defendant has sold five lots for burial purposes, including the lot owned by the complainant Bruno. All of this land was originally located in the township of Eatontown until the incorporation of the borough of West Long Branch in 1908, when it became a part of that borough.
The whole property described in the deeds above referred to, with the exception of the Chasey dwelling-house and a small plot of ground adjacent thereto, has been exempted from taxation since 1880 by the municipal authorities of the *Page 741 
township of Eatontown until the incorporation of the borough of West Long Branch in 1908, and since that time by the municipal officials of that borough. The whole tract, excepting the dwelling-house and lot, is shown on the tax map of the borough of West Long Branch as exempt, and is marked "cemetery." The defendant is organized under the General Corporation act, and objection is made by the complainants to the exercise by the defendant of the rights and privileges granted corporations under the Cemetery act. 1 Comp. Stat. p. 372. To meet this objection, since these suits were instituted, the Greenlawn Cemetery Association of Long Branch, New Jersey, has been organized under the Cemetery act, and the defendant company has agreed to convey these lands to the new association, although no such conveyance has yet been made. In view of that situation, this objection is now admitted by all counsel to be of no practical consequence is not pressed, and the question thereby raised has not, therefore, been considered. No formal application under the provisions of the Cemetery act was ever made to the municipal authorities of the township of Eatontown or of the borough of West Long Branch, either by the defendant or any of its predecessors in title, for the consent or approval of an extension or addition to Greenlawn Cemetery as shown by the map of 1902 until after the institution of the first suit. The complainants in the first suit contend that, without such consent having been first had and obtained, the defendant is without authority to sell burial plots or to conduct and operate a cemetery. The defendant contends that this was not necessary, because it was neither creating a new cemetery nor extending an old one, and that the mapping of additional lots, as shown on the 1902 map, was not an extension of or addition to an old cemetery, but was simply the laying out into lots of the land which had already been dedicated to cemetery purposes. After the institution of these suits, however, and at the suggestion of the late Vice-Chancellor Foster, by whom the application for preliminary injunction was heard, the Greenlawn Cemetery Association of Long Branch, New Jersey, was incorporated under the Cemetery *Page 742 
act, and that company made formal application to the mayor and council of the borough of West Long Branch and the local board of health for permission to lay out and operate an addition to or extension of Greenlawn Cemetery. This application was in no sense an admission by defendant of any legal requirement therefor, express disclaimer of such requirement being made by the defendant. The permit was refused both by the mayor and council and by the board of health, and an appeal from that decision was taken to the state department of health. (That the applicant for the municipal consent was not the owner of the land intended to be used for cemetery purposes at the time of the filing of this application was no bar to the application or to a permit.Burdette v. Fairview, 66 N.J. Law 523.)
A hearing on this appeal was duly had before the state department of health, and on February 3d 1925, that department decided, on advice from the attorney-general, that it was without jurisdiction to reverse the decision of the municipal authorities or to grant a permit, because Greenlawn Cemetery had been in existence since 1880, and the land which were the subject of this controversy had been exempt from taxation for many years, thereby indicating that this particular land was a part of the original cemetery, and that there was no present intention to enlarge or extend the existing cemetery. In rendering this decision the state department of health acted judicially. Dodd v. Board,67 N.J. Law 463. It based its decision on a finding of fact. No appeal from that decision was taken. This finding of fact is, at least, evidential here.
It also appears from the testimony that the cemetery in question is but one of thirteen located within the limits of the borough of West Long Branch. The complainants in the first suit strenuously object to the establishment of any new cemeteries therein. They also complain that Greenlawn Cemetery is "rapidly becoming a nuisance" by reason of its upkeep having been neglected by former owners who allowed the grass, weeds and briars to overrun the lots and graves and monuments to fall into disrepair. Injunctive relief is not *Page 743 
asked, however, on the ground that the defendant is maintaining a nuisance, and, in fact, there is no evidence indicating that offense. It is perhaps true that the old portion of the cemetery has not been kept in as good condition as it deserved to be kept, but the defendant is not responsible for that condition. The defendant says, however, and this statement is not denied, that it has already entered into contracts for the improvement and embellishment of Greenlawn Cemetery, including the old portion thereof, involving an expenditure of $10,000, and it appears, conclusively, from the testimony that it is the intention of the defendant and Greenlawn Cemetery Association, after it acquires title, to improve, conduct and operate this cemetery in a manner which will be a credit, not only to themselves, but to the municipality in which it is located as well.
It seems to me that the whole question presented in this controversy is one of fact, as the law applicable does not seem to be seriously in dispute. The earliest statute requiring the consent of municipal authorities to the enlargement of or addition to cemeteries which my research has disclosed, is P.L.1885 p. 166 ch. 129. This act was amended by the legislature in 1904 and again in 1905, and now appears in the revision of the Cemetery act as section 27. 1 Comp. Stat. p. 380. Provisions similar to those contained in that act are also contained inP.L. 1906 p. 284 ch. 152; 1 Comp. Stat. p. 386. If, therefore, this whole tract of land was intended for and dedicated to cemetery purposes when the original map was made in 1880, as claimed by the defendants, subsequent legislation requiring municipal consent would not affect the rights of the original owners, or their successors in title, to use that land for cemetery purposes without obtaining such municipal consent. But if it is the intention of the defendant to locate a new cemetery or to enlarge or extend an old one, then it would be necessary for the defendant to obtain the consent and approval of the governing body and the board of health of the municipality within which such proposed new cemetery or enlargement of the old cemetery is located. 1 Comp. Stat. p. 380 § 27 (P.L. 1905 *Page 744 p. 112), and p. 386 § 43 (P.L. 1906 p. 284). This question of fact, however, resolves itself into one of intention on the part of the original owners of this tract of land at the time Greenlawn Cemetery was originally laid out in 1880. The only parties who could conclusively state that intention were the original owners, and they are now dead. The intention must, therefore, be gathered from the records and documents and other evidence concerning this property to which access may be had. The earliest record which has been offered in evidence is the map of March, 1880. That map, standing alone, would indicate that the portion of the Chasey property which it was intended to dedicate to cemetery purposes was the portion shown on that map only; but this indication is contrary to the apparent intent as shown by the description in the deed from Levice Chasey et ux. to Mary H. Chasey, dated January 31st, 1882, and marked Exhibit D-5 in this cause, wherein the property is described as "being the same property whereon the said Charles Chasey now resides, and including Greenlawn Cemetery containing ten acres." This is an indication to my mind that it was intended that the whole tract, except the residence portion, should be dedicated to cemetery purposes, and this suggestion is further strengthened by the fact that from 1880 down to the present time this whole property, except the dwelling-house and a small plot connected therewith, has been exempt from taxation. The fact of the exemption of the property from taxation must have been known and acquiesced in both by the Chaseys, who owned the land, and by the municipal authorities, whose duty it was to subject it to taxation if not exempt under the law. It could hardly have been exempted without the knowledge of the municipal authorities. It has, therefore, apparently been recognized by the municipal authorities for a period of over forty years that this whole tract, except the dwelling-house plot, was dedicated to cemetery purposes. The assessment of the dwelling-house and plot and the exemption of all the balance of the tract is the strongest kind of evidence of the dedication of the nine and five-tenths acres' tract to cemetery purposes. This intention *Page 745 
to so dedicate it is further borne out by the fact that in 1902 the Chaseys, who were then alive and still the owners of the property, had the unmapped portion of that property mapped and plotted as a part of Greenlawn Cemetery. This action was in conformity with the intention of the owners as previously indicated in the deeds above referred to. Over two hundred and fifty burial plots have been sold from this new map and burials have been made therein. It must have been a notorious fact, impossible of escaping the attention of the municipal authorities, that since 1902 this so-called "addition" was being used as a cemetery and as part of Greenlawn Cemetery. The execution, delivery and recording of two hundred and fifty deeds for plots shown on this new map was, at least, some notice that this portion of the original tract was being used for cemetery purposes. It is impossible to conceive that such a state of facts could exist without the knowledge of those charged with authority to consent to or deny the location of new cemeteries or the enlargement of old. This silent acquiescence by the municipal authorities, first of the township of Eatontown, and, since its incorporation in 1908, of the borough of West Long Branch, for a period of over twenty years in the sale of burial plots and the use of the premises shown on the 1902 map for burial purposes is evidence of the fact that prior to 1902 the property shown on that map was dedicated to cemetery purposes. It will be noted that the deed from Mrs. Chasey to Mr. LaCour in September, 1922, is for certain lots or plots shown on the 1902 map. It is not for acreage. The filing of this map and the sale of burial plots according to that map constituted a dedication of this property for burial purposes if such dedication was not before made. The long delay of the municipal authorities in objecting to this cemetery's operation and in applying to this court for injunctive relief constitutes, in my judgment, such laches as to bar them from relief now, the claim for which might be said to rest upon technical grounds, because there are no facts here from which this court could find that further interments in this cemetery are "dangerous to public health" within the provisions *Page 746 
of P.L. 1885 p. 167 § 8; 1 Comp. Stat. p. 382 § 29. Further interments in this cemetery, so far as is shown by the evidence, would be no more dangerous to the public health than interments in any other of the thirteen cemeteries in this borough. Other cemeteries adjoin or are in close proximity to Greenlawn, which is, apparently, one of the oldest, if not the oldest, cemetery in the borough. Other things being equal, it would seem to be more equitable to oppose future burials in cemeteries of more recent origin than Greenlawn. Further changed conditions may, when shown to exist, warrant this court in enjoining further burials in Greenlawn Cemetery, but the evidence justifying the issuance of an injunction under the provisions of the act referred to must be clear and conclusive. Suffice it to say that the evidence submitted in the case sub judice is too vague and uncertain, and entirely insufficient to warrant the issuance of this extraordinary writ at this time.
Much conflicting testimony has been taken in this cause on the question of the use to which a portion of the property here in question has been devoted for the last twenty years or more. It does not seem to me that this testimony is of very much value in the face of the documentary and other evidence above alluded to. Nor is the fact that a portion of this land, which was not in actual use for burial purposes, was not originally laid out according to a map or plan at all conclusive as against dedication; nor, to my mind, is the fact that the map of 1902 is marked "Addition to Greenlawn Cemetery," controlling, especially in view of the testimony of the engineer who made the map, as to why he placed that wording thereon. In my judgment, the words "enlargement," "addition" or "extension," as used in the statute prohibiting such enlargement or extension, are intended to apply only to lands not originally intended for and dedicated to cemetery purposes at the time the original cemetery was laid out. Such additions are usually the result of acquisition by the owners of the cemetery by purchase or otherwise of adjoining lands. But that is not so here. The so-called addition *Page 747 
is a part of one undivided tract wholly owned by the person who originally laid out Greenlawn Cemetery.
From the evidence submitted in this cause I am unable to arrive at any other conclusion than that the defendant is not creating a new cemetery nor enlarging an old one within the meaning of the act requiring the consent of municipal authorities; nor is the evidence such as to warrant an injunction on the ground that further burials in this cemetery would be dangerous to the public health, nor on the ground of nuisance or any other ground.
As to the rights of the private parties complainant, they, of course, have no standing in this court on this application for an injunction, unless it be on the ground of nuisance. There is no public nuisance shown to exist, and their testimony indicates no special injury to them as private individuals. Morris RailroadCo. v. Prudden, 20 N.J. Eq. 531; Halsey v. Rapid Transit Co.,47 N.J. Eq. 380; Humphreys v. Eastlack, 63 N.J. Eq. 136.
I am of the opinion, therefore, that the injunction prayed for should be denied and that the preliminary restraint made herein should be dissolved.
With reference to the application of the complainant Bruno for an injunction against the defendant to prevent it from selling any of its lands for other than burial purposes, it clearly appears from all the evidence submitted that there has never been any intention on the part of defendant company to do otherwise than this complainant claims it should do. There being no impending violation of the rights of this complainant, he cannot be entitled to injunctive relief, and such relief to him will be denied. Both bills of complaint will be dismissed, with costs. *Page 748