The bill of complaint is filed to restrain the defendant from using certain lands for cemetery purposes and for incidental relief.
The complainant alleges that the defendant The Slavonian Catholic Church of the Assumption is a duly organized religious society and that St. Mary's Cemetery is an unincorporated association which, in connection with the church, operates the cemetery hereinafter mentioned; that in the year 1903, the church became the owner of three tracts of land situate in the Township of Saddle River; that the first tract, known as Lot 1 in Block 12B, containing about twenty-five acres, was laid out, developed and has continuously been used as a cemetery; that the second and third tracts of about five and one-half acres each, known as Lot 1 in Block 12 and Lot 1 in Block 12A, were not used for cemetery purposes in the year 1939; that in the year 1940, the municipality assessed the last mentioned tracts for taxes; that the defendants in the year 1940 caused the bodies of four paupers to be buried in tracts two and three, and on subsequent occasions caused additional bodies to be buried therein for the purpose of avoiding taxation. It is further alleged that no permit was ever issued or granted for the use of any of said lands for cemetery purposes. The complaint alleges that the use of tracts two and three constitutes a menace to public health.
The answer denies that St. Mary's Cemetery is an unincorporated association and says that the title is merely a name used to designate the cemetery. It also sets up that while the statutes provide that no existing cemetery shall be enlarged without the consent of the municipality, P.L. 1904 ch. 249, expressly provides that nothing therein stated shall apply to lands heretofore purchased by any duly organized cemetery *Page 484 
company. The Revised Statutes state that this act is superseded but do not mention by what it is superseded. It may be that it is superseded by R.S. 8:3-2. The answer further states that the lands conveyed to the church consist of one tract of thirty-five acres, which is now shown on the tax map as three separate tracts; that the church was informed that prior to the date of its deed the township had granted a cemetery permit to its grantor and others, covering the lands in question and adjacent property. It also states that defendant has no present intention of making any further interments in the disputed portion of its lands.
The proofs do not establish the fact that a permit was ever issued and the township records disclose none. It is quite probable that the church was led to believe that it had a right to conduct a cemetery. This inference is supported by the fact that no question was ever raised of the right of the church to operate a cemetery on part of the lands conveyed to it. The church has developed and used the front portion of about twenty-five acres for cemetery purposes almost from the date it took title. The lands so used have been described as the better part of the whole tract. The two rear tracts, containing about ten or eleven acres, are low and marshy and for that reason were not used for burial grounds until the question of taxation arose.
The municipality does not ask relief against the use of the twenty-five acre tract even though no permit was issued therefor. Any objection now made by the township would be barred by its own laches. See West Long Branch v. Home Building, c., Co.,99 N.J. Eq. 738.
The defendant, as an incorporated religious society, has the power to acquire, purchase, receive, have and hold cemeteries or burial places, c. R.S. 16:1-4 (f). This power, however, must be read in conjunction with R.S. 16:1-7, which provides as follows:
"Any religious society, however incorporated, may hold and convey and dispose of land, not exceeding fifty acres which was, before April twelfth, one thousand eight hundred and ninety-eight, conveyed to it for the purposes of a cemetery and the burial of the dead, and may sell the same in lots or plots for the burial of deceased persons, subject *Page 485 
to the laws of this state governing cemeteries and the burial of the dead * * *."
Since the lands were not conveyed to the church until the year 1903, it took no rights under Title 16, above mentioned. NeitherP.L. 1904 ch. 249, nor R.S. 8:3-1 and 8:3-2 apply to the defendant for it is neither a duly organized cemetery company nor is it an incorporated association as mentioned in the excepting parts of the statute. The revision leaves us in the dark as to the counterpart of the act of 1904, above referred to.
While the municipality cannot now complain of the use of that part of the cemetery located on the twenty-five acre tract, it seems to me the church should not be permitted to enlarge its user. It is true that the pastor, who was in office at the time the lands were acquired, says that it was the intention that the whole tract should be dedicated for cemetery purposes. It is nevertheless true that such an intention would not have prevented an injunction against the use of any part without a permit if the township had duly objected. The church will not now be permitted to claim a greater right than that which it has chosen to exercise for about forty years.
The testimony of the township engineer, which stands uncontradicted on the record, was to the effect that because of the nature of the ground the continued use of the disputed portions of the tract for burial purposes would constitute a danger and detriment to public health. The assertion of the defendant that it will not inter more bodies in tracts two and three does not convince me that the threatened danger to the public is to be eliminated. This court may restrain threatened nuisances which are dangerous to public health. See State Boardof Milk Control v. Newark Milk Co., 118 N.J. Eq. 504.
Therefore an injunction will issue directing the church to remove all bodies interred in the disputed portions of the lands and enjoining it from making burials therein unless a lawful permit is obtained to do so. *Page 486