The Chancellor.
The above corporation was organized under the general act entitled, “An act to incorporate trustees of religious societies.” After their organization, Samuel H. Conger and wife conveyed to them a lot of land in the city of Newark, upon which they erected a house of worship. The deed of conveyance was upon the following trust: “to have and to hold the said pro *58 perty as an Evangelical Lutheran Church for ever, in which the doctrine of the Augsburg Confession and Luther’s Smaller Catechism shall be taught and adhered to; and provided, that if necessary, the privilege of preaching in the English language, besides the German, shall be granted to the rising generation, until such a time that a separate church can be provided for an English congregation, so, however, that the Germans shall always have the right to’ select their time for worship; and provided further, that the said party of the second part shall not, by deed, mortgage, or by any other ways or means, alienate, dispose of, or otherwise charge or encumber said property, excepting the mortgage now given to Samuel H. Conger to secure part of the purchase money of said premises. And provided further,’that in case these conditions be violated, then any one or more regular members shall have the right of applying to the Evangelical Lutheran Ministerium of the State of New York and adjacent parts with which the congregation is connected, to take possession of, hold, and keep said property in trust for carrying out the above named purposes: and in case said conditions be violated, and no appeal made to the said Evangelical Lutheran Ministerium of the State of New York and adjacent parts, then the officers of said ministerium shall constitute a board of trustees, with full powers to secure said property for the above named purposes.”
At the time of the organization of the society, they adopted a constitution, or rules and regulations, for the congregation. By this constitution, the seniors and wardens, seven in number, are the trustees, and, as such, have the control of the property of the church. The pastor of the church must be a regular clergyman connected with some evangelical Lutheran synod in the United States of America: his salary is fixed by mutual agreement, and he is elected to his office for such term as he and the congregation may mutually agree upon. In case *59 lie is accused of immoral conduct, the seniors and the wardens shall examine the accusation, and if it prove to be founded, they shall bring it before the congregation, upon which the votes of two-thirds of the members having a right to vote shall be sufficient to discharge him from his office; if there are not two-thirds, but a majority against him, the matter may be submitted to the synod. The pastor is elected by a majority of votes, on the recommendation of the church council.
In the year 1841, George F. Masehop, one of the defendants, was elected the pastor of the congregation for a term of years not expired. The bill alleges, that about a year ago, he commenced a systematic effort to lead the congregation to adopt practices in church worship, which are not approved or practised by those churches which are connected with the Evangelical Lutheran Ministerium of the State of New York and adjacent parts, among which practices was the use of lighted candles during the service in the church in the daytime, the use of the wafer at the sacrament of the Lord’s supper, auricular confession, the use of the sign, of the cross, and such Romish practices as are disapproved by the evangelical branch of said denomination. The bill further charges, that the said Masehop has endeavored to induce the congregation to dissolve their connection with the ministerium of New York, and to form a connection with the Buffalo synod; that he is arbitrary in the exercise of his office, and that he has withdrawn from the synod of New York, and connected himself with the Buffalo synod; that in consequence of the said conduct and practices of said Masehop, the congregation, in July last, gave him uotiee that the congregation would not retain him as their pastor after three months from that time. They complain that he refuses to discontinue his services as such pastor, and that he intends, by the introduction of new members into the congregation, entertaining religious views corresponding with his own, to wrest the said church property from the purposes to which it was devoted.
*60 The hill further alleges, that the trustees committed the charge and custody of the church premises to one Henry W. Yanss, in order that he might prevent the said Maschop from the further use of the said church; that the trustees applied to the sexton for the keys of the church, hut he refuses to deliver them; that the said trustees, the complainants, attempted to lock up the church, according to a vote of the hoard, but that two of the trustees, who are in the minority, resisted, and would not suffer the trustees of the church to take possession; and that said Mas-chop and his friends threaten, that if the trustees take possession of the church property, they will forcibly retake possession of the same. The complainants pray that the defendants may be enjoined and restrained from interfering with the legal possession of the said property by the complainants, or from, in any manner, preventing the complainants from taking charge of and controlling the said property, and from taking any action or measures whereby the present members of the said congregation shall be disfranchised of their right to vote, and that the said trustees may by no action of the said church be deprived of any of their official functions and powers, and that the said trustees may have access to the books and seal of the church.
This court has no right to institute an inquiry into the doctrines or mode of worship of any religious society, except such inquiry shall become absolutely necessary for the protection of trust property. If property is given to a particular denomination of Christians adhering to certain doctrines and forms of worship, and an attempt is made to pervert the property to any use, religious or otherwise, different from that to which the donor devoted it, it is the duty of the court to restore the property, and to protect it in its original use. To do this, it frequently becomes necessary for the court to inquire into the peculiar tenets and doctrines of different societies claiming the property under the same trust. It is not the province *61 of the court, in pursuing such an inquiry, to decide which doctrines are correct, hut which society maintains the doctrines, to support and promulgate which the donor dedicated the property,
The doctrines and ceremonies of the Evangelical Lutheran Church were very fully and ably discussed upon the argument; and, on the part of the defendants, an effort was made to show that the ceremonies, which the bill complains the pastor had introduced into the congregation, were not inconsistent with the Augsburgh Confession or the teachings of Luther’s Smaller Catechism.
After giving to the case the best consideration in my power, I do not think it one in which the court is called to decide upon the religious belief or ceremonies of the society or of any of the individuals connected with this controversy.
The complainants are in possession of the property in question. Their right to the property, as trustees under the deed, is not disputed. It is not alleged that the defendants claim the property adversely to them. The Rev. Mr. Maschop, as their pastor, introduced into the church certain ceremonies, which the complainants allege have a Romish tendency, and ai’O opposed to the precepts and practices of the Evangelical Lutheran Church, to maintain the doctrines and ceremonies of which the donor granted the property. The complainants thereupon dissolved the connection existing between the congregation and Mr. Maschop, as their pastor, and gave him notice to discontinue his services. This, for the purposes of this argument, it must be assumed they had a right to do. The bill does not allege that the defendants question this right; but the complaint is, that notwithstanding all this, Mr. Maschop still intrudes himself upon the congregation, and that he is making efforts to displace some of the complainants as trustees. The effect of an injunction in this case will be to prohibit Mr. Maschop from intruding himself into the church, and officiating there as a *62 ■clergyman. Mr. Maschop, assuming the allegations of the bill as true, has no better right to officiate in that church than any other clergyman. This court would not, therefore, be any more justified in issuing an injunction to prohibit Mr. Maschop’s preaching in the church, than it would be to enjoin a clergyman of any other denomination, who, without any pretence of right, should take upon himself to trespass upon this congregation, by entering their pulpit and promulgating his peculiar religious doctrines. According to the bill, Mr. Maschop is a mere trespasser, without the shadow of right. This court has no more authority to enjoin such a trespasser than it has to enjoin an intruder into another’s private domicil.
But the bill further alleges, that by the constitution of the church, the pastor is required to be connected with some evangelical Lutheran synod of the United States; that Mr. Maschop is not so connected, but has united himself with the Buffalo synod. No misconduct of Mr. Maschop can justify the interference of this court. The congregation have already deposed him as their pastor for such alleged misconduct. The real difficulty now is, that he will officiate in spite of such deposition.
The bill further alleges, that Mr. Maschop intends to take measures to deprive such members as are opposed to him of their right to vote, and compel such members to take pews, and contribute to his support, or else to be disfranchised of any right to vote in matters affecting the church property, and so to depose the present trustees, and thereby obtain undisputed possession of the church for his own purposes. The court is asked to interfere to prevent this. ¡ From anything that appears upon the face of this bill, these apprehensions of the complainants are entirely groundless. The court cannot grant an injunction to allay the fears and apprehensions of individuals; they must show the court that the acts against which they ask protection are not only threatened, but will, in probability, be committed to their injury. > How can the *63 liov. Mr. Masehop depose such, members as are opposed to Mm, or compel members to take pews, or deprive them of their right to vote, or turn out of office the present trustees ? As the pastor of the congregation, he possessed no power to accomplish any of those objects. Being disrobed, as he is, of all such official authority and influence, it cannot well be conceived, if any such purposes are meditated, how he can effect them. If it should be answered, he may convert a majority of the congregation to the adoption of Ms doctrines, and by this means gain Ms ends, I can only say, this court has no power for any purpose, or under any circumstances, to prevent any individual from teaching any religions doctrine he pleases.
I can see no ground to justify the interference of the court. The complainants are in the full possession and enjoyment of their property. If the defendants trespass upon that possession, the complainants must redress themselves against such trespasses in the courts of law in the ordinary mode.