VAIL'S EXECUTORS *vs.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY and others.

A demurrer will lie wherever it is clear that, taking the charges in the bill to be true, the bill would be dismissed at the hearing; but it must be founded on this, that it is an absolute, certain, and clear proposition that it would be so. Where the demurrer is general to the whole bill, and there is any part, either as to the relief or the discovery, to which the defendant ought to put in an answer, the demurrer, being entire, must be overruled.

The argument was before the Vice-Chancellor, on bill and demurrer.

*Mr. Williamson* and *Mr. Frelinghuysen*, for the demurrer.

*Mr. Vanatta*, contra.

THE VICE-CHANCELLOR.

The general demurrer raises the question whether, upon the bill taken as true, any matter appears whereon the court can make a decree or give the complainants any relief.

A demurrer will lie wherever it is clear that, taking the charges in the bill to be true, the bill would be dismissed at the hearing; but it must be founded on this, that it is an absolute, certain, and clear proposition that it would be so. Where the demurrer is general to the whole bill, and there is any part, either as to the relief or the discovery, to which the defendant ought to put in an answer, the demurrer, being entire, must be overruled. 1 *Daniell's Ch. Pr.* (4th Am. ed.) 543, 584; *Metler's Adm'rs* v. *Metler*, 3 *C. E. Green* 273.

The bill in this suit is for discovery and relief, and the question therefore is, whether the case as presented in it shows any equity whatever to which the defendants should be held to answer. If not, the demurrer must be sustained; otherwise it must be overruled.

The following facts appear from the bill. The complainants are the executors of Stephen Vail, deceased, and, as such, are the owners of twenty-five hundred and forty-eight shares of the capital stock of the Central Railroad Company of New Jersey, one of the two corporations who are the defendants in the suit. The stock, at its par value, amounts to $254,800. The other defendant is the Central New Jersey Land Improvement Company, a corporation of this state. The act incorporating the latter company was approved April 9th, 1867. It was procured by the railroad company to enable the latter corporation advantageously to dispose of certain surplus lands purchased by it through a series of years, and which were not deemed necessary or desirable to be longer held, because not needed by the company for the purposes of its legitimate business. The moneys from time to time expended in purchasing these lands along or near to the line of its road, had formed part of the capital of the company, and the value of the surplus lands so purchased exceeded $2,000,-000. The object of the creation of the land company was declared in the preamble of the above-named charter, to be to dispose of these surplus lands for the stockholders of the railroad company, for whom the same were held in trust. The company was authorized to have a capital stock of $200,000, divided into shares of $100 each, with the privilege from time to time of increasing the same, as might be required for the purposes of the incorporation.

The railroad company, by a circular dated December 17th, 1870, gave notice to its stockholders that all the valuable lands held by it along and near the railroad had been transferred to the land company at present cost, and scrip stock of the land company received in part payment therefor, with

$30 credited on each share, subject to further call of $70 on each share, in instalments to be thereafter paid.

The land company, by a circular dated March 1st, 1871, and sent to the stockholders of the railroad company, notified them that the fourth and fifth instalments of $10 each per share on the scrip stock of that company were thereby called in, and payable on or before the 1st days of April and May respectively.

Subsequent to this notice, the directors of the railroad company sent to its stockholders their annual report, dated March 20th, 1871, wherein the following statements were made:

"The extensive and valuable lands along the line of the Central road and of the Newark branch, so far as the same were no longer necessary or desirable for the purposes of the railroad, have been transferred from time to time to the Central New Jersey Land Improvement Company, under a charter secured some years ago for the very purpose of receiving these lands when the time should come for parting with them. All the stock of the land company was held by or for this company, and as it was no longer necessary or desirable to control it, the stock was allotted, at the close of the year, among the stockholders of the Central road pro rata with $30, or thirty per cent., credited on each share, as a representative of the profits of the year over eight per cent., and of the previous profits of which no division had been made. The remaining instalments, as called by the land company, will be paid over to the railroad company in liquidation of the balance due by the former to the latter on the purchase, and the money will be applied to the purchase of equipments, &c., for which purpose large sums would otherwise have to be raised. The value of these lands is large and rapidly increasing, and will, it is believed, return a good profit to the stockholders."

By a circular dated May 10th, 1871, and issued by the land company, the sixth, seventh, eighth, ninth, and tenth instalments of $10 each per share on the company's scrip stock were called in, payable on the 1st days of June, July,

August, September, and October then ensuing. In this circular, notice was given that all scrip stock on which the fourth and fifth instalments of ten per cent. each should not have been paid on or before the 1st day of June, 1871, would be forfeited. This circular was not received by the complainants till on or after the 10th of said June; and they were apprised on or about the day last named, by said company, that the time for forfeiture by reason of non-payment of said instalments, would be extended to the 20th day of said month.

The complainants have not paid said instalments, or any of them, and on the 17th of said June filed their bill for an injunction, discovery, and relief. The threatened forfeitures were thereupon enjoined.

There is one matter presented by the facts set forth in the bill, of which an outline is as above, which, it seems to me, must operate to overrule the demurrer. It is the threatened taking from the complainants of their portion of the undivided earnings—or, in other words, of the thirty per cent. of the value of the surplus lands. The shares allotted to the complainants were five hundred and nine and three-fifths. Their par value was $50,960. They represented so much actual value at their " present cost" of the surplus lands transferred to the land company. This appears from the directors' report. An amount equal to thirty per cent. of this latter sum had been retained by the directors of the road company from the earnings of previous years. It was undivided profits, and was the sum of $15,288. It was in the discretion of the directors whether these earnings should be paid to the stockholders or retained for the better prosecution of the company's business. It does not appear in what form these earnings were retained, whether distributable or not. The directors appear to have proposed retaining permanently these earnings, and in lieu of paying them directly to their stockholders, to provide a plan by which an equal amount would be paid to the stockholders by the land company, when that company should sell the lands. For this purpose they allotted the scrip stock, and by crediting thirty per cent. on it,

and so giving to their stockholders for seventy per cent. what was worth one hundred per cent., and, as the directors supposed and declared, probably worth more, the stockholders of the railroad company who should choose to pay the seventy per cent. would get back the one hundred or more, and thereby receive the dividend of thirty or whatever larger sum the expected profits of the land company might be.

The statements of the defendants' counsel at the argument in explanation of the company's scheme, furnished facts which, if admissible for me to consider on this motion, might modify the above conditions of the case as presented by the bill. But upon this demurrer I must be restricted exclusively to the case as the complainants' bill presents it, and I put my conclusion that the demurrer must be overruled and that the defendants must answer, upon the objectionable and inequitable feature of the arrangement above set forth, by which, so far as these complainants are concerned, $15,288 worth of their property is proposed to be taken from them, unless they shall advance the sum of $35,672 to purchase stock in a new corporation, having, it may be, the same directors and officers as the other, but separate and distinct in its existence, purposes, and interests. Why this arrangement was so made does not clearly appear. And I am unable to see how, without a justifying explanation of it by the defendants, I can assume it to be a rightful exercise of the legitimate and undeniably large discretion necessarily delegated to the directors in the management of the corporate property and business. The arrangement, it was said, was an impartial one, and put all the railroad stockholders upon the same footing. But this circumstance does not prevent it from being unjust and illegal. Granting that none of the other objections urged against the general scheme are good, and assuming that these lands were properly exchanged for the land company's stock, and that the stock could properly be sold by the road company for the best price it might bring, or be allotted in whole or in part among the latter company's stockholders in proportion to their shares, still

the point remains that, because the complainants would not purchase this scrip and become shareholders in a new corporation, they lost not simply the profits that might arise over and above the par value of the scrip, but the $15,288 of their property which the directors, as their trustees, and without their consent, had transferred to the land company, and which, on being forfeited, went exclusively to the latter company to swell the profits of its members. This arrangement and its result 1 must hold to be beyond the powers which, as trustees, the directors of the company possess. Unexplained and on its face it seems adapted to the interests of the land company, and not to those of the road company in which the complainants' capital is invested.

Under the rules before cited as applicable to general demurrers, the equity thus presented makes it necessary for the defendants to answer fully, and in this view I shall express no opinion upon the other points insisted on by complainants. The defendants' answer may so far modify the case as at present exhibited, as to render it better to dispose of it on the precise grounds of controversy it shall be found finally to present.

With the clear conviction I entertain of the complainants' equity in the single matter above stated as the case now stands, I see nothing in any delay alleged against them to disentitle them to the aid of the court.

The demurrer must be overruled, with costs.