## JOE LAKE ET AL. v. J. S. HOOD ET AL.

Decided February 27, 1904.

**Will—Entry of Judgment Nunc Pro Tunc—Compromise by Attorney.**

Application was made to probate a will by which the testator left his property "to the poor people of M.," and to have a trustee appointed to carry it into effect. The application was denied, and the mayor of M. then intervened and applied for a rehearing, which was also denied. Afterwards the city attorney, claiming to represent the mayor, and an attorney claiming to represent J. H. and the other heirs of the decedent, made a compromise agreement in the private office of the county judge by which certain notes belonging to the estate were set over to the mayor. The agreement was never entered up as the judgment of the court, nor any memorandum thereof entered on the docket. Later the mayor tendered into court the proceeds of the notes, asking that the compromise agreement be entered up as the judgment of the court and a trustee appointed to distribute the proceeds of the notes. The heirs resisted such appointment and asked that such proceeds be awarded to them. The mayor testified that he did not authorize the city attorney to make the compromise, and the testimony of the attorney who represented the heirs in making it showed only that he represented J. H., but what interest J. H. had in the estate did not appear. Held: (1) That the court properly refused to enter a nunc pro tunc judgment on the compromise agreement at a subsequent term of the court. (2) That no authority was shown for making the compromise agreement.

Error from the County Court of Harrison. Tried below before Hon. H. T. Lyttleton.

*Scott, Jones & Gardner,* for plaintiffs in error.

*F. H. Prendergast,* for defendants in error.

TALBOT, ASSOCIATE JUSTICE.—John Jones, alias John Hood, died in Harrison County, Texas, in April, 1900, leaving an estate of the estimated value of $2400. S. P. Jones was appointed temporary administrator of his estate, and found among the deceased's papers an instrument wholly in the handwriting of deceased, as follows: "In case my death be sudden, I want everything above my funeral expenses given to the poor people of Marshall; this May 28, 1899. Jno. Jones." S. P. Jones, on the 26th day of April, 1900, filed an application to have said instrument probated as the last will and testament of John Jones and to have an administrator or trustee appointed to carry the provisions of said will into effect.

The defendants in error, being the heirs of said John Jones, alias Hood, contested the application to probate the will, and the probate thereof was refused. Joe Lake, plaintiff in error, was not a party to this contest, but on the 22d day of May, 1900, as mayor of the city of Marshall, filed a motion in the County Court for a new trial or rehearing of said application to probate the will, and also prayed for a writ of injunction restraining the parties in possession of the property belonging to Jones' estate from delivering it to his heirs. A temporary injunction was granted, but upon a hearing of the application for new trial the same was, on May 23, 1900, refused and the injunction dissolved. It is claimed that notice of appeal from this order was given, but the record

before us shows that no such notice appears in the minutes of the County Court.

After Lake's motion for a rehearing on the application of S. P. Jones to probate the will was overruled, Ben S. Pope, city attorney of Marshall, claiming to represent Joe Lake, as said city's mayor, and J. S. Hood, pretending to represent all the heirs of John Jones, alias John Hood, deceased, entered into an agreement and compromise of the litigation, by the terms of which the said Pope received for Joe Lake, as mayor of Marshall, for the benefit of the poor people of said city, seven promissory notes of $100 each, belonging to the estate of the said Jones, deceased, and the remainder of the property was delivered to J. S. Hood. The terms of this compromise were incorporated into a judgment for the purpose of making it the judgment of the County Court, but it was never entered of record, and there is no memorandum on the judge's docket showing that any such judgment was ever rendered by him. The only evidence of such a judgment is the oral statements of witnesses that it was prepared and approved by the county judge in his private office. There is no evidence of any character that such judgment was rendered in open court.

On October 10, 1901, plaintiff in error, Mrs. R. M. Slater, made application to the County Court of Harrison County to be appointed trustee with authority to collect the notes turned over to Lake, by virtue of the compromise made with J. S. Hood; that her bond as such trustee be fixed, and that she be authorized to distribute the money derived from said notes among the poor people of Marshall.

On April 14, 1902, Joe Lake filed a petition in said County Court in which he recited the history of the litigation growing out of the efforts to probate the will of Jones; the agreement to compromise, and that he had collected the money due on said notes delivered to Pope, amounting to $700. He further alleged that in pursuance of said agreement a judgment was prepared and agreed to by the parties and approved by the judge of the court, by which judgment the seven notes were adjudged to said Lake, to be collected and proceeds disposed of according to the provisions of the will, and the remainder of the property set aside to the heirs of the said John Jones, deceased. He also alleged that he declined to act as trustee for the purpose of distributing the money, and prayed that such trustee be appointed by the court, to whom he could deliver the money; that the compromise judgment referred to be entered nunc pro tunc, and that he be discharged with his costs. This petition was signed alone by attorneys and not sworn to. The heirs of John Jones, deceased, who are defendants in error here, appeared in the County Court and contested the entry of the judgment as prayed for in Lake's petition and the appointment of a trustee, and prayed that the money in Lake's hands be ordered delivered to them. They alleged, among other things, that no such agreement as that set up by plaintiffs in error was ever made with the heirs of the said John Jones, or with any person authorized by them to make such agreement. That there

35 Civ—3

was no such judgment or agreement as claimed by plaintiffs in error, and no memorandum thereof made by the Court.

It seems that the applications of plaintiffs in error were tried together by the court without a jury and resulted in a judgment refusing the appointment of a trustee, denying the entry of the judgment nunc pro tunc on the agreement of compromise, and Lake was ordered to deliver to defendants in error the money collected on said seven promissory notes. From this judgment of the court this writ of error is prosecuted. Mrs. R. M. Slater, however, by an instrument filed in this court, has abandoned the prosecution of the writ, and her right to have a trustee appointed as prayed for by her is not before us.

There was no appeal from the order of the County Court denying probate of the will of John Jones, deceased, and the correctness of the court's ruling in that respect is not before us. Some nice questions of law are suggested in counsel's briefs upon the subjects of charitable trusts and in whose name suit should be maintained for the appointment of a trustee, when, in such case, none is named; but inasmuch as the case will be affirmed upon other grounds, it becomes unnecessary to consider and discuss those questions.

As disclosed by the record the right of the poor people of Marshall to the money involved in this controversy, and of the plaintiffs in error to have a trustee appointed to receive and distributed the same among such people, depends upon their right to have enforced the agreement and compromise set up in the pleadings. Can this agreement be sustained and enforced against the defendants in error in view of the evidence contained in the record? We are of opinion it can not. If it be conceded that defendant in error, Joe Lake, as the highest municipal officer of the city of Marshall, had the right to maintain, for the benefit of the beneficiaries in Jones' will, a proceeding to have a trustee appointed to carry into effect the gift and trust created by said will, still it is believed he would not be authorized, at least without a judgment of the court, to compromise with those contesting the right of such beneficiaries to the gift, and accept less than the whole amount of the bequest. Besides, the evidence clearly shows that the agreement and compromise was not made by Lake, and that he never agreed to it. He testified: "I was mayor of Marshall in 1900, and was advised by S. P. Jones and Ben S. Pope that I should apply to have the will of John Jones probated. I agreed to do that. I was absent when the compromise was made and did not agree to it. I did not know it was made until some days afterward. I thought the city was entitled to all the money or none. As mayor of the city I presented the matter to the city council and they declined to have anything to do with the money. I have not taken any steps to set the agreement aside." The evidence does not show that Ben S. Pope had any authority to represent Lake and in his name and for the poor people of Marshall make the compromise relied upon. That his position as city attorney and as attorney of Lake, in endeavoring to get Jones' will probated, may have induced him to

believe that he was so authorized, is not questioned, but the evidence is wholly insufficient to warrant the conclusion that he was in fact authorized to act for, and, by his acts, bind Lake. That Lake refused to ratify his acts in effecting the compromise is placed beyond controversy by Lake's own testimony. Furthermore, there is an entire absence of testimony to show authority in either J. S. Hood or T. P. Young, as attorney, to make and bind the heirs of John Jones, other than J. S. Hood himself, by the compromise alleged. Ben S. Pope testified in substance that after the motion of Lake for a new trial was overruled and he had given notice of appeal, the heirs of John Hood, through J. S. Hood and their attorney, T. P. Young, came to his office and asked him if he would entertain a proposition to settle the litigation. He further stated in effect that after the settlement, J. S. Hood, representing the heirs of John Jones, remained in Marshall and collected the note turned over to him under the terms of the compromise. This is all that is shown by the record that can be construed to be evidence touching his authority to act for the heirs, and practically amounts to no evidence upon that question. What interest J. S. Hood had in the money held by Lake was not shown by the evidence, and hence the compromise could not be enforced as to such interest.

T. P. Young testified that he was attorney for J. S. Hood, and thinks he wrote the agreement. There is no evidence that he represented the other heirs even as an attorney, and if such relation had been established he would not thereby have been authorized to enter into the compromise sought to be enforced, without special authority to do so.

The court did not err in refusing to enter the judgment claimed to have been prepared, incorporating the terms of the compromise. Whatever action the judge took in the matter was not in open court, but in his private office. The judgment there agreed upon was never pronounced the judgment of the court, or, if so, there was no written memorandum of the same to be found upon the judge's docket evidencing the same, and without some such memorandum or other record evidence the judgment could not properly be entered after the adjournment of the court.

Plaintiff in error, Joe Lake, having failed to establish any right to have the compromise judgment entered, and showing no right in himself or the beneficiaries under Jones' will to the money alleged to be in his hands, the judgment of the court below is affirmed.

*Affirmed.*