FRANK VAN DER PLAAT

*v.*

THE UNDERTAKERS' AND LIVERYMEN'S ASSOCIATION OF PASSAIC COUNTY et al., members thereof.

[Submitted November 29th, 1905. Decided December 7th, 1905.]

1. A complainant, who showed no established undertaking business or the ownership of any appliance used in carrying on such business, cannot obtain an injunction restraining an undertakers' and liverymen's association from boycotting him.

2. The mere fact that the constitution of an association of undertakers and liverymen contains clauses the obedience of which would result in a boycotting of complainant, did not entitle him to an injunction restraining such a boycott.

---

On order to show cause why an injunction should not issue. Heard on bill, with affidavits annexed, and affidavits in answer thereto.

*Mr. Edward F. Merrey,* for the complainant.

*Mr. William B. Gourley,* for the defendants.

PITNEY, V. C.

The object of the bill is to enjoin a boycott.

The allegation of the bill is that the complainant is educated as an embalmer and undertaker, and has been, for two months prior to the filing of the bill, ready and willing to engage in that business, in the city of Paterson, in Passaic county, but has been prevented from doing so by the defendant association and its members.

It will be observed at once that the complainant has not, on his own showing, the least shadow of an established business. He does not own a single appliance necessary or convenient for the transaction of the business, but avers that he relies on purchasing coffins and other supplies of that kind from persons engaged in the business of furnishing such supplies, and on hiring hearses, carriages and horses from persons engaged in keeping those articles for hire for funeral purposes.

He alleges that the defendant association comprises all the undertakers in the county of Passaic and most of the livery-stablemen, and, as I understand the bill, all of those owning hearses and funeral carriages in the county of Passaic.

He further alleges that he recently applied for membership in that association and was refused.

He asserts, further, that he tried to buy a coffin from the only manufacturer or dealer in that article in the city of Paterson, and was unable to buy one, and was informed by the dealer, Mr. Kearsting, that he was unable to sell him any for the reason that the members of the defendants' association would not buy of him if he should sell to a member outside of the association; that he applied to two different liverymen who kept hearses, namely, Mr. Zabriskie and Mr. Ackerman, and they each refused to hire him a hearse and carriages except at a higher price than that charged to the members of the defendants' association, and put their refusal on the ground that he was not a member of the association.

He does not state that on either of these occasions he actually had in hand a corpse to be disposed of.

The attempt to purchase the coffin and the attempt to hire the hearse and carriages were each of them mere experiments.

He produces and points out clauses in the constitution of the defendant association, which are as follows:

"Article 10. The members of this association shall not deal with any manufacturers of caskets or other funeral furnishings, nor with any jobbing house in undertakers' supplies, who shall sell, or offer to sell, to parties not in the business, or (after due notice) shall sell, or offer to sell, to any undertaker who persistently violates any of the provisions of this constitution, or to an expelled member of this association.

"Article 11. The members of this association shall not loan, sell, hire or exchange, either directly or indirectly, any part of their equipments or supplies to an expelled member, or to any undertaker who has violated any of the provisions of this constitution, or to any undertaker doing business in the county of Passaic, N. J., who is not a member in good standing in this association.

"Article 17. No undertaker or liveryman shall let or hire any hearse or coach to any private individual or person not an undertaker or liveryman for less than the schedule adopted by this association; neither shall he or she hire to aid or assist any undertaker or liveryman not a member of this association to secure hearse or coaches for any funeral.

"Neither shall any undertaker hire hearse or coaches from any liveryman who shall violate the schedule of prices or who shall hire hearse or coaches to any undertaker of Passaic county who is not a member of this association, after due notice has been given him."

The complainant's counsel cited a great number of adjudged cases in support of his argument that upon the facts as above stated he is entitled to relief in this court.

Before coming to the affidavits in behalf of the defendants, I stop to say that I have found no case which warrants the interference of this court against a boycott against a person who has no established business to be subjected to a boycott.

Coming, now, to the defendants' affidavits. They show that the complainant's applications for membership—there were two —were treated precisely as other applications were treated. The rules of the association require that the applicant should have certain qualifications as to moral character and financial standing, and should have served an apprenticeship of one year as assistant to a practicing undertaker.

Two different committees were appointed, one after the other, to inquire into complainant's qualifications in these respects, and both found him deficient in the qualification of skill and familiarity with the conduct of the business, and that he had not served any apprenticeship as an assistant to an undertaker, and they were unable to find that he had been sufficiently, if at all, instructed in the process of embalming.

The only party (Mr. Kearsting) in Paterson who makes a business of supplying coffins, swears that he never was forbidden by the defendant association, or any of its members, to sell coffins or funeral supplies to persons in Passaic county other than members of the association, or threatened with the loss of trade if he did so; that in point of fact he has done so to an undertaker not a member of the association within a very short time. He gives a version of the interview with the complainant testified to with him quite different from that given by the complainant. He denies emphatically that he gave as a reason for not selling the coffin that he was afraid of loss of business from the members of the association. Judging from his account of that interview, he (Kearsting) was simply looking, with proper prudence, at the probability of his receiving payment for the coffin proposed to be purchased.

. The defendants' officers, ex-officers and some of its members swear that its constitution was copied from that adopted by the Hudson county society; that there never was any thought by any member of the association of employing the paragraphs above quoted to prevent anybody from doing business who was not a member of the association, and that those paragraphs never had been enforced against anybody; that there never was any occasion to enforce them because every undertaker in the county of Passaic joined the association, and all are still members except one, who withdrew from the association because he became insolvent and went through bankruptcy, and has lately been refused readmission principally, if not wholly, on the ground of his insolvency.

Notwithstanding his non-membership he has been doing business in Paterson, as an undertaker, in a small way, without molestation by the defendant society.

The officers and members of the defendant society swear that the attempt of the complainant to establish himself as an undertaker in Paterson did not excite any action on the part of the society, and did not receive or meet with any opposition on its part or any of its members.

With regard to the complaint that complainant was unable to hire a hearse and carriages except at a rate higher than that charged to members of the society, it is to be remarked that the affidavits show, what is a matter of almost common knowledge, that it is the practice for the undertakers to make a profit of a dollar each from the hire of the hearse and coaches, and the complaint is, not that complainant could not hire the hearse and coaches at the price usually charged for those for funeral purposes, but that he was unable to exact from the proprietor the profit of one dollar each.

But Mr. Zabriskie and the man (Van Houten) in charge of the stable of Mr. Ackerman, to whom the complainant applied, each give quite a different account of the interviews from that given by the complainant.

Mr. Zabriskie swears that one evening, shortly before the bill was filed, the complainant came to him at his place of business, just as he had returned from a business trip in the country, and asked him to let complainant have the use of a hearse and three coaches the following day. Mr. Zabriskie answered as follows: "I stated to him that I could not do that; I was busy the next day and could not accommodate him." He proceeds to say he did not refuse to hire the hearse and coaches to him on the ground that he was not a member of the defendant association. He also swears that the complainant did not offer to pay cash for the use of the articles, nor did the deponent refuse to take the money, because none was offered. He further denies that he said to complainant that he could not do business with anyone not a member of the association, nor did he tell complainant that at any time, and he swears that he never said that he was afraid to let complainant have the hearse and coaches by reason of a fear of a boycott by the association, or that they had threatened him. He swears that no such threat had been made to him, and adds: "I did not know anything about the financial

standing of the complainant and I decline to do business with any person unless I have some reasonable knowledge of their ability to pay."

With regard to Mr. Ackerman, his foreman, Van Houten, swears that the complainant called at Ackerman's stable and asked the hire of two coaches for the next day, and stated that he was an undertaker. Van Houten told him the charge was $5 each. Complainant did not offer to pay, but later in the day called up Van Houten on the telephone and stated that he desired to have a hearse and another coach, to which he was answered, "he could have the coaches, but he did not let the hearse to everybody," to which he replied, "that if he did not get the hearse he need not send the coaches." He denies that he said that complainant could not hire a hearse from Ackerman at any price.

Generally, the statements in complainant's affidavits of the principal facts relied upon on this motion are thoroughly met and denied by the affidavits of the defendants, so that I am not satisfied that he has been subjected to any boycott, even if he had a business which was liable to be injured by a boycott. What he may be able to establish on final hearing, when he will have the power to compel the attendance of witnesses and exercise the right of cross-examination, I cannot, of course, anticipate.

In short, the complainant's case, at present, rests on the mere existence in the constitution of the defendant society of the clauses above set forth, without any proof which satisfies my mind that the clauses in question have ever been enforced, or threatened to be enforced, against him, or that their existence has been the least obstruction to his success.

On this point I can find no judicial authority that the mere existence of such articles, without their being actively enforced, form any ground for the interference of this court.

I conceive it to be a fundamental rule governing the action of this court that it exercises its restraining powers only for the protection of some threatened injury to a property right or a right in the nature thereof. The mere unlawfulness of an act or a series of acts, even though that unlawfulness amounts to

criminality, does not excite the action of this court, unless it affects the personal or property rights of some individual who asks the aid of the court.

It follows that, granting that I may conceive that the clauses in question are capable of being so enforced by the defendants as to work an unlawful boycott against some person, yet until a person who is threatened with such injurious action, and is likely to suffer pecuniarily from it, applies to the court, I cannot take action against the defendants.

The case is not within the rule upon which I acted in *Martin* v. *McFall*, 65 *N. J. Eq.* (20 *Dick.*) 91. There Martin was a baker in full possession of an established business, and declined a request of a labor union to close his shop at eight o'clock, and was threatened with a boycott, and actually suffered in his trade by the refusal of his old customers to deal with him. The difficulty at the interlocutory hearing was to charge any particular person, as an individual, or the union as a body, with having instigated the boycott.

I will advise an order that the order to show cause be discharged, with costs.