Complainants, named as executors in the will of Joseph Greenstone, deceased, the probate of which is being contested in the Atlantic County Orphans Court, seek to invoke the injunctive powers of this court to prevent the consummation of an alleged plan to secure withdrawal of caveats filed by the widow and a niece of decedent by diverting and paying to them moneys bequeathed to designated charitable organizations. The claims of the caveatrices are alleged in the bill to be unfounded and such as cannot be sustained in the Orphans Court. Complainants, though still not qualified as executors, plead a duty to see that decedent's expressed desires are not thwarted and that funds marked for public charitable use are not diverted by trustees of these charities to the widow, whose participation in the estate was expressly limited by the testator, and to a niece not mentioned by him.
The immediate motion is one to strike the bill of complaint; a motion on behalf of the complainants, for preliminary restraint, is held in abeyance.
The courts of New Jersey seem never to have been called upon to consider and determine whether or not trustees to carry out charitable purposes may use trust funds to settle a controversy such as has here arisen. Nor have our courts been asked to consider and determine whether or not those named in a will as executors and trustees may, prior to the probate of the will and their qualification, file such a bill in equity as has here been filed. Nor have our courts definitely determined that one named in a will as executor and trustee, but not yet qualified, under circumstances such as those here alleged, is such an aggrieved party as to entitle him to seek relief in this court.
The value of the estate of Mr. Greenstone is estimated at $500,000. A trust fund of $100,000 is created by the will to *Page 335 
provide an annual income of $1,820 for the widow for life. Most of the balance of the estate is bequeathed to fraternal organizations, in trust for use in their charitable work. One of these organizations was incorporated by an act of Congress and its charitable work is national in its scope. Several of the organizations are corporations of Pennsylvania; some are of New Jersey. The charitable work of all is public in its nature. Decedent directed that even the moneys set aside to provide an income for his widow should be divided among the fraternal organizations, for public charitable use, if the widow refused to relinquish her right to take against the will or contested it, if she did not survive the testator, if her death occurred prior to the setting up of the trust, or, upon her death, after accepting benefits under the trust.
Complainants allege they have been informed that four of the designated charitable organizations have entered into or are about to enter into agreements with the caveatrices to the end that their caveats may be withdrawn; that said agreements contemplate payment to the caveatrices, by those designated as trustees, of a portion of the moneys bequeathed for public charitable use; and, that such payment and diversion of funds would be illegal. This court is asked to intervene by temporary injunction and, in the event the will is admitted to probate, to permanently enjoin the parties from making or concluding any such contracts. Complainants also seek to compel a discovery relative to any such agreements, made or proposed, and as to the specific nature and probable beneficiaries of the charitable work performed by the corporate charitable beneficiaries.
The motion to strike is made by Anna E. Greenstone, the widow of decedent. In support of her motion, she urges that complainants are not aggrieved, have no standing to enforce a charitable trust, and have no right in this court to prosecute this cause because they have failed to allege probate of the will.
Obviously, complainants could not here allege probate; the will has not been probated and complainants have not qualified as executors. This is not only admitted but the fact is alleged as a fundamental reason for this appeal for relief. Complainants, in fact, claim that in appointing them as *Page 336 
executors decedent put upon them the responsibility of seeing that his charitable purposes were carried out and that his widow received only what he expressly stated he wished her to have from his estate. They argue that their position is justified because of the necessity of maintaining the estate in statu quo and of preserving the res. The preservation of the status quo and the res has, however, been provided for by the Atlantic County Orphans Court. On argument, counsel advised this court that one of the complainants, The First Camden National Bank and Trust Company, had been appointed and was acting as administratorpendente lite.
Suppose we assume that, already, agreements have been prepared and are about to be executed between the caveatrices and one or more of these charitable organizations, and that such agreements provide for ultimate payment to the caveatrices of some portion of the fund bequeathed for public charitable use as a consideration for withdrawal of the caveats, would that be illegal? Am I to assume that the designated trustees would execute and deliver such agreements without seeking the advice of this or other proper court? In MacKenzie v. Trustees ofPresbytery of Jersey City, 67 N.J. Eq. 652; 61 Atl. Rep. 1027,
Court of Errors and Appeals, the prayer of the bill was to restrain a charitable trustee from diverting funds of the charity to uses contrary to those expressed in a deed of trust. The cause was instituted by executors and trustees and the devisees and heirs-at-law of the settlor. The defendant was a charitable trustee. The bill was dismissed on the ground that complainants had no standing to bring the action; that only the attorney-general, the charitable trustees, or the beneficiary had that right. The court said:
"It must not, however, be inferred, from the fact that the right of the present complainants to maintain their suit has been denied, that the use of the estate or fund proposed by the Presbytery of Jersey City, and revealed by the pleadings, meets with our approval. Evidently such use is not in exact accord with the original intent of the founder, and it can be permitted, if at all, only after the whole case shall have been fully disclosed in the Court of Chancery, either upon an information filed by the attorney-general (probably ex relatione), *Page 337 
as representing the undefined beneficiaries of the charity, against the Presbytery of Jersey City, in and through its trustee body, or upon a bill exhibited by the presbytery, by and through its body charged with the duties of trusteeship, in which the attorney-general, as representing the beneficiaries, should be made a party defendant. In the proceedings upon such information or bill, if it appears that the trust cannot be literally executed, there should be presented to the Chancellor, for approval, either directly or by an inquiry in the master's office, a scheme for the due administration of the charity within the limits of the judicial doctrine of cy pres, as hereinbefore accepted. Until such course shall have been pursued, it will be the duty of the proper presbyterial body to preserve the fund intact, and the attorney-general should take care that such duty is not violated."
In the early New Jersey case of Covenhoven v. Executors ofCovenhoven, 1 N.J. Law 243, the Supreme Court said:
"It is evident from the whole tenor of the will that the testator made a division of all his property, and a provision for the maintenance of his children which he deemed proper, and perhaps thought adequate. This disposition belonged to him as of right. He intended his children for trades, and, until they commenced their business, he wished that they should be kept together and maintained out of the profits of his property. He burthens his real estate with their maintenance. Hence, the executors had no right to apply the personal estate for that purpose, or to expend it in any manner not authorized by the will. The will should have been a law to them, from which they were not warranted in swerving, unless under the directions ofthe Court of Chancery, Orphans Court, or some such properjudicature. To assume such a power themselves was unjustifiable, and to sanction it would be to say they may set the will aside, and do what they themselves think expedient or proper. The law gives them no such power, nor ought they to possess it. Neither they nor we can destroy the will." (Italics mine for emphasis.)
It has been the practice, in other jurisdictions, to submit a compromise for approval or disapproval of the court. In Morris
v. Boyd, 110 Ark. 468; 162 S.W. Rep. 69, a settlement *Page 338 
was approved by the Chancery Court. The residue of an estate, by will, was given to testator's daughter and her issue for life, or, upon failure of issue as of a certain time, to the executor, in trust to establish a Catholic college. The daughter contested the will. A settlement was then effected between the testamentary trustee and the daughter. On appeal the Supreme Court of Arkansas held:
"The effect of the court's approval of this compromise is to decide the will contest pro tanto or to alter the terms of the will as executed by the testator and to vest the absolute title to the property and divide it according to the court's judgment of justice and expediency. We think the court possesses no such jurisdiction. * * *
"The jurisdiction of courts of equity to supervise the execution of charitable trusts does not include the power to alter the terms of the trusts nor to sanction a diversion of any portion of the trust estate. That would involve the making of a new will for the testator and a disposition of the property contrary to the intention of the donor. * * *
"We do not mean to hold that trustees are powerless to settle and compromise, either with or without the sanction of the court, controversies concerning the property included in the trust estate. They doubtless have the implied power to adjust such controversies with various claimants of the property, and the approval of the Chancery Court is only necessary under those circumstances to protect the trustees from charges of fraud or improvidence in the exercise of those powers. But the settlement or compromise involved in this case reaches to the very foundation of the trust and involves a direct change and setting aside of the will of the testator. This is as much beyond the power of the court as the trustees themselves."
The Texas Appellate Court, in Lake v. Hood,35 Tex. Civ. App. 32; 79 S.W. Rep. 323, said:
"* * * still it is believed he would not be authorized, at least without a judgment of the court, to compromise with those contesting the right of such beneficiaries of the gift, and accept less than the whole amount of the bequest."
In Johnson v. Oslont, 108 Tenn. 32, 37; 65 S.W. Rep. 23, *Page 339 
and in Rolfe v. Lefebre, 69 N.H. 238; 45 Atl. Rep. 1087, a court passed upon the facts and determined that the compromises were fair and for the benefit of the charities. In the latter case, commenting on its right to act in the matter, the court said:
"But, although the power exists, it should be exercised cautiously and only where it clearly appears that the proposed alienation is clearly for the benefit of the charity."
Complainants argue that the bill should be held, and that a temporary injunction should issue because they "anticipate" an ultimate violation of the terms of a trust and diversion of moneys marked for charitable purposes. In the MacKenzie Case,supra, the Court of Errors and Appeals said that equity would restrain, by injunction, breaches that were shown to be "incontemplation." Vice-Chancellor Backes, in Meyer v.Somerville Water Co., 82 N.J. Eq. 572; 89 Atl. Rep. 545, said that injunctive relief would not be granted until the injury to the plaintiff was "threatened or imminent or is, in allprobability, about to be inflicted, and the writ will not issue merely to allay the fears and apprehensions of the plaintiff where there is no showing or reasonable ground for believing that the defendant is about to commit the wrongs complained of, orwhere it appears that he is without the opportunity or intentionof so doing," citing High on Injunctions (4th ed.) ¶ 22.
The Court of Errors and Appeals in Shmidheiser v. StatesAvenue Construction Co., 94 N.J. Eq. 522; 121 Atl. Rep. 521,
declared that only in cases where a violation of a restrictive covenant in a deed "is presently threatened" that a court of equity will interfere, and where there is no presently threatened violation of the restrictive covenant, no ground of relief is shown.
Vice-Chancellor Pitney, in Van der Plaat v. Undertakers,c., Association, 70 N.J. Eq. 116 (at p. 121);62 Atl. Rep. 453, said:
"I conceive it to be a fundamental rule governing the action of this court that it exercise its restraining powers only where there is some threatened injury to a property right or right in the nature thereof. * * * Until a person, who is *Page 340 threatened with such injurious action, is likely to suffer pecuniarily from it, applies to the court, I cannot take action against the defendants." (Italics mine.)
Vice-Chancellor Berry, in West Long Branch v. Home Building,c., Co., 99 N.J. Eq. 738; 133 Atl. Rep. 758, said:
"There being no impending violation of the rights of this complainant, he cannot be entitled to injunctive relief, and such relief to him will be denied." (Italics mine.)
In Butler v. Rogers, 9 N.J. Eq. 487, Chancellor Williamson said:
"As a general rule, the court ought not to interfere in cases of nuisance, where the injury apprehended is of a character to justify conflicting opinions, whether the injuries will, infact, ever be realized." (Italics mine.)
In German Evangelical Lutheran Church, c., v. Maschop,10 N.J. Eq. 57, Chancellor Williamson said:
"From anything that appears upon the face of this bill, these apprehensions of the complainant are entirely groundless. The court cannot grant an injunction to allay the fears and apprehensions of individuals; they must show the court that the acts against which they ask protection are not only threatened but will, in all probability be committed to their injury." (Italics mine in all quotations.)
What is the present danger? Certainly no moneys of the decedent may be misused until they have been paid over to the trustees, and, obviously, payment cannot be made until the will has been admitted to probate and complainants have qualified as executors, or, until the will has been denied probate and an administrator has been appointed. Suppose the present bill were to be dismissed and suppose that agreements were then executed by the defendant charities providing for future diversion of trust funds? Still it would be necessary to proceed in the administration of the estate to the point of distribution before the acts feared could possibly occur. Obviously no assets of the estate are in danger of present dissipation. It is equally obvious that the actual danger envisioned by complainants is that after executors or an administrator shall have qualified, and distribution of the estate shall have been made and charitable organizations shall *Page 341 
have received the money, the trustees will then pay over some portion thereof to one or both of the caveatrices. This discussion makes it clear that what complainants actually seek is an ultimate permanent injunction prohibiting any diversion of trust funds from the charitable uses designated — the enforcement of a trust.
This court should always exercise its discretion to the end that justice and equity prevail, and, if I were persuaded that any reasonable probability existed that justice might be defeated by dismissal, this bill would stand over until final hearing. That course could be justified on reasoning similar to that adopted by Vice-Chancellor Bentley, in Grausman v. PortoRican-American Tobacco Co., 95 N.J. Eq. 155 (at pp. 167, 168);121 Atl. Rep. 895; affirmed, 95 N.J. Eq. 223;122 Atl. Rep. 815, and followed in the precedents he cites, which reasoning also resulted in the adoption of Chancery rule 69. I am convinced, however, that to have this bill stand over until a final hearing would serve no useful purpose that may not be otherwise and more logically accomplished.
One or more of the charitable organizations, put upon notice by the institution of this cause and the allegations of the bill of complaint, may seek the advice of a proper court. In such a proceeding two of the three moot questions of law, here interjected, could not be raised. The third and direct question of the right of trustees, designated in a will to receive funds to be used for public charities, to make certain of the probate of the will by a compromise with and payment to a caveator of a portion of the trust fund, would be in issue. Also, if the right to compromise were established, justification for any proposed settlement could be weighed and determined. Equity will, of course, give direction for future administration of trusts, and it will, if it be at all possible, preserve and enforce with exactness the trusts originally declared. MacKenzie v.Trustees of Presbytery of Jersey City, supra (at pp. 670,686).
A further consideration is important. On argument counsel for one of the organization-donees frankly stated to the court that, in view of the possibility of objection and intervention by or through an attorney-general and the uncertainty *Page 342 
of the law, officers of his corporate client would wish the fundamental question of the legality of a compromise determined before they considered an agreement to compromise. It may well be that, even if thought of the possibility of compromise has been entertained, warned by the institution of this cause, by the claims of complainants, and by the debatable legal questions involved, one or all of the charities will refuse to enter into any suggested compromise. In Grausman v. Porto Rican-AmericanTobacco Co., supra, the Court of Errors and Appeals said:
"The function of the court is to apply legal principles to the facts as they exist and are before it, and not to anticipatory facts, which may or may not come into being; for if this were otherwise a court would constitute itself, virtually, as advisory counsel in the cause before it, and in consequence destroy the value and stability of its decisions."
In the Grausman Case bills were filed seeking to enjoin the defendant company from submitting to a stockholders' meeting for action, a resolution of the directors providing for an amendment to the certificate of incorporation. Complainants averred that the proposed amendment threatened to impair their vested rights as owners of stock of the corporation. An order to show cause why a preliminary injunction should not be granted was allowed, together with a temporary restraining order. On the hearing below, the Vice-Chancellor dissolved the restraining orders and refused a preliminary injunction. No motion or objection had been addressed to the bill. The appellate court said:
"While it is true that counsel in the present case have not objected to the progress of the suit by the complainants herein, the court on its own motion is induced to take notice of the situation and to take action thereon, because it thinks it highly imprudent and unwise to decide questions of law postulated upon anticipatory acts of the corporation, which acts may never take place."
The court concluded:
"Therefore, upon the ground that the bills of complaint were prematurely filed, the order in each case denying a preliminary injunction is affirmed, with a direction to the court *Page 343 
below that the bills of complaint be dismissed without prejudice."
In the foregoing, the court commented on the fact that, at argument before it, counsel announced that several of complainants had withdrawn from any further contest. This significantly exemplified, the court said, the probability that the other complainants themselves might change their attitude toward the adoption of the scheme after the matter had been thoroughly discussed.
In the instant case, if, as complainants contend, the claims of the caveatrices are unfounded and cannot be sustained they may, if the charitable donees refuse to consider entering into an agreement of compromise, withdraw their caveats.
It seems to me logical and essential that, so soon as may be, it be determined whether or not testator was of sound mind and whether or not his will was the product of his own free will or of undue influence, and if the will is sustained, that the estate be administered to the point of distribution. If this will was made by decedent when of unsound mind, or as a result of undue influence, it should not be probated. If denied probate, complainants will have no further interest in the controversy; if, as complainants maintain, the will must stand, they will become the executors. If the will is sustained and distribution is about to be made, an attorney-general by his own information or one ex relatione, the trustees, or the beneficiaries by class bill making the attorney-general a defendant, could apply to a court for enforcement of the trust. If this bill were permitted to stand over until actual and imminent danger of diversion of trust funds arose, an amendment of or supplement to the bill would, obviously, become necessary. The administration of the estate must be had in New Jersey and jurisdiction may always be had of the parties.
I am not unmindful of the fact that the bill includes a prayer for discovery, nor am I unmindful of the rule that where a demurrer is general to a whole bill and there is any part, either as to the relief or the discovery, to which the defendant ought to put in an answer, the demurrer, being entire, must be overruled. Vail's Executors v. Central Railroad *Page 344 Co., 23 N.J. Eq. 466. To hold, however, that discovery should be had of the terms of any existing or proposed agreement of compromise and the character of the charitable work performed by the designated fraternal organizations, would, I am persuaded, be a presently useless act. Disclosure of the facts sought to be elicited can be compelled, if that be necessary, on an application for advice or instructions, or on bill to enforce the provisions of the trust as hereinabove outlined.
I am convinced that the bill of complaint in this cause was prematurely filed and lacks present equity. An order striking the bill will, therefore, be advised.